# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| RYAN EVANS,<br><br>   Plaintiff,<br><br>vs.<br><br>DUSTIN GAVIN and IOWANT LLC,<br><br>   Defendants. | No. 19-CV-0094-LRR-KEM<br><br>**REPORT AND RECOMMENDATION** |

Currently pending before the court is Plaintiff Ryan Evans's motion for default judgment. Doc. 10. For the reasons that follow, I recommend **denying** the motion.

## I.  BACKGROUND

Evans initiated this lawsuit on September 4, 2019. Doc. 1. His complaint alleges that after he began selling t-shirts featuring the state of Iowa and the words "Iowant Another Beer" at a restaurant in Cedar Rapids, Iowa, Defendants Dustin Gavin and Iowant LLC began selling "identical and confusingly similar" apparel. Doc. 1. Evans alleges that he began selling his apparel in 2017, and "it achieved recognition, positive feedback and immediate goodwill." *Id.* He posits "[o]n information and belief" that Gavin saw his apparel for sale and decided to misappropriate his idea. *Id.* He alleges that Defendants began selling "identical and confusingly similar" apparel in 2019. *Id.* Evans also alleges that Defendants "applied for an intent-to-use trademark for 'Iowant' with the [United States] Patent and Trademark Office [USPTO], Serial No. 88019815; and . . . [r]egistered domain names for Iowant.com." *Id.*

Gavin's trademark application is still pending. **U.S. Trademark Application Serial No. 88,019,815** (filed June 28, 2018).[1] In August 2019, the USPTO issued an initial, nonfinal denial of trademark registration because the mark on the drawing submitted by Gavin differed from the mark on the specimen showing the use of the mark in commerce: the drawing displayed the mark as "IOWANT" (in no particular font or style), while the specimen "show[ed] a political statement much different than the singular term IOWANT" (the words "IOWANT TRUMP 2020" inside the outline of the state of Iowa on a shirt). *Id.* The USPTO gave Gavin a chance to "respond to this refusal by submitting a different specimen" but indicated it would not accept an amended drawing. The USPTO also indicated an "additional ground for refusal" of the application, noting that "the applied-for mark as used on the specimen of record is merely a decorative or ornamental feature of the goods and, thus, does not function as a trademark to indicate the source of applicant's goods and to identify and distinguish them from others." *Id.*

Evans's complaint alleges two counts. Doc. 1. Count I is labeled "Violation of the Lanham Act" and alleges that Defendants' "use of the 'Iowant' word, name and mark is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection or association between Evans and [Defendants], or to the origin, sponsorship, or approval of [Defendants'] goods by Evans—all in violation of 15 U.S.C. § 1125(a)." *Id.* As a remedy for Count I, Evans seeks a permanent injunction prohibiting Defendants from using the "Iowant" mark; an injunction requiring Defendants to recall and destroy all products featuring the "Iowant" mark and to transfer their rights in Iowant LLC, in the domain name, and in the pending trademark registration to Evans; and monetary damages including Defendants' profits, Evans's lost profits, treble damages, attorney's fees, and costs. *Id.* Count II alleges trademark infringement under 15 U.S.C. § 1125(a) and the common law based on Evans "own[ing] unregistered trademark rights to the term 'Iowant.'" *Id.* Count

---

[1] I take judicial notice of the filings on the USPTO docket for Gavin's trademark application. *See* **Fed. R. Evid. 201**; *see also, e.g.*, ***Celebrity Chefs Tour, LLC v. Macy's, Inc.***, 16 F. Supp. 3d 1159, 1163-64 (S.D. Cal. 2014) (when deciding motion to dismiss, taking judicial notice of documents filed with the USPTO in connection with trademark application).

II "seeks all available remedies under 15 U.S.C. § 1125(a) and the common law, including damages sufficient to compensate Evans for the Defendants' infringement." *Id.*

Both Defendants were served on September 16, 2019. Docs. 5, 6, 14; *see also* Doc. 10 at 7. Neither filed an answer, and they did not enter an appearance in this action. Evans moved for default entry, which the clerk granted on October 9, 2019. Docs. 8, 9. The clerk mailed the entry of default to both Defendants, but it was returned as undeliverable. Docs. 11-12. On October 16, 2019, Evans moved for default judgment on his trademark-infringement and unfair-competition claims. *See* Docs. 10, 10-1. In his motion, Evans seeks the following relief:

- a permanent injunction prohibiting Defendants from "selling any apparel or goods bearing the term 'Iowant' or any variation thereof";
- an injunction requiring Defendants to (1) transfer the Iowant domain name to Evans, (2) withdraw the application for trademark registration, (3) recall and destroy all products featuring the term "Iowant," and (4) provide Evans's attorney with an accounting of all sales of products featuring the term "Iowant" and Defendants' profits therefrom;
- an award of damages based on Defendants' profits (as determined by the accounting); and
- attorney's fees and expenses.

*Id.* Defendants did not respond to the motion for default judgment. The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa, referred the motion for default judgment to me for a report and recommendation.

## II. DISCUSSION

Federal Rule of Civil Procedure 55 provides in relevant part:

(a) ENTERING A DEFAULT. When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default.
(b) ENTERING A DEFAULT JUDGMENT.

3

> (1) *By the Clerk.* If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk—on the plaintiff's request, with an affidavit showing the amount due—must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
> (2) *By the Court.* In all other cases, the party must apply to the court for a default judgment. . . . If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing. The court may conduct hearings or make referrals—preserving any federal statutory right to a jury trial—when, to enter or effectuate judgment, it needs to:
>> (A) conduct an accounting;
>> (B) determine the amount of damages;
>> (C) establish the truth of any allegation by evidence; or
>> (D) investigate any other matter.

Default judgment should be entered only if the defendant was properly served with the summons and complaint. *Cf.* **Trs. of Nat'l Asbestos Workers Med. Fund v. Wilson**, No. 2:12-cv-06449, 2014 WL 1329935, at *1 (S.D. W. Va. Mar. 28, 2014). Although Rule 55 dictates that a party who has entered an appearance be given notice of the motion for default judgment, nothing in the rule requires that the default entry or motion for default judgment be served on a party who has failed to respond to an action despite proper service of the summons and complaint. *See also* **Volvo Fin. Servs. v. Freightport, Inc.**, No. CV 17-10401-MGM, 2018 WL 547539, at *1 (D. Mass. Jan. 23, 2018) (adopting report and recommendation) (granting default judgment against defendant despite entry of default mailed to defendant being returned as undeliverable); **Zinganything, LLC v. Imp. Store**, 158 F. Supp. 3d 668, 670 & n.1 (N.D. Ohio 2016) (same); **Trs. of Nat'l Asbestos Workers**, 2014 WL 1329935, at *1 (same).

By virtue of the default entry, "the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" **Murray v. Lene**, 595 F.3d 868, 871 (8th

4

Cir. 2010) (quoting 10A Charles Alan Wright et al., **Federal Practice and Procedure § 2688** (3d ed. 1998)). I thus analyze whether the facts in the complaint, taken as true, state a claim under the Lanham Act and for trademark infringement under Iowa state law. *See id.* at 870-71.

Both Evans's trademark-infringement and unfair-competition claims under federal law are based on the following provision of the Lanham Act:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
> is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

**15 U.S.C. § 1125(a)(1)(A)**. Trademark infringement under § 1125(a) of the Lanham Act requires (1) that the plaintiff "'has a valid, protectible mark and [(2)] that there is a likelihood of confusion between [his] mark' and the marks that the defendants were using."[2] ***Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc.***, 908 F.3d 313, 322 (8th Cir. 2018) (quoting ***B&B Hardware, Inc. v. Hargis Indus., Inc.***, 569 F.3d 383, 389 (8th Cir. 2009)). Evans's claim for trademark-infringement under Iowa state law does not materially differ from his federal claim for trademark infringement. *See* ***PSK, LLC v. Hicklin***, 757 F. Supp. 2d 836, 856 n.19 (N.D. Iowa 2010); *see also* ***Commercial Sav. Bank v. Hawkeye Fed. Sav. Bank***, 592 N.W.2d 321, 326-28 (Iowa 1999).

The same facts supporting a trademark-infringement claim under the Lanham Act also support an unfair-competition claim. *See* ***Heaton Distrib. Co. v. Union Tank Car Co.***,

---

[2] Courts sometimes list "nonfunctionality" of the mark as a third element of trademark infringement. *See, e.g.*, ***Weems Indus., Inc. v. Plews, Inc.***, No. 16-CV-109-LRR, 2017 WL 1364599, *3 (N.D. Iowa Apr. 13, 2017). I will address functionality as part of the valid-trademark element.

5

387 F.2d 477, 483 (8th Cir. 1967); ***JDR Indus., Inc. v. Vance***, No. 8:14-CV-284, 2017 WL 1386331, at *3 (D. Neb. Apr. 18, 2017); ***Tovaritch Spirits Int'l SA v. Luxco, Inc.***, No. 4:11CV950 JCH, 2012 WL 6652949, at *7 (E.D. Mo. Dec. 21, 2012); ***World Wrestling Entm't, Inc. v. AWA Wrestling Entm't, Inc.***, No. CV 07-2058 ADM/JSM, 2008 WL 4660145, at *3 (D. Minn. Oct. 21, 2008). Unfair-competition claims are broader than trademark-infringement claims, however. ***Heaton Distrib.***, 387 F.2d at 483. An unfair-competition claim can be based on (1) "passing off," when a defendant "sells its goods or services under the pretense that they are the goods or services of [plaintiff]";[3] (2) reverse passing off, which involves "the defendant's unauthorized removal of plaintiff's product's identifying marks before reselling the goods" as if they were defendant's;[4] or (3) any other actions taken by the defendant that falsely designate the origin of defendant's goods and cause a likelihood of confusion regarding the origin of defendant's goods.

Thus, all of Evans's claims require (1) that Evans had a valid and protectable trademark or that Defendants otherwise falsely designated the source of their apparel and (2) that a likelihood of confusion existed. I will address each element in turn.

### 1. *Whether the Facts in the Complaint Establish that Evans Had a Valid and Protectable Trademark or that Defendants Otherwise Falsely Designated the Source of Their Apparel*

A claim under § 1125(a) can be based on either a registered or an unregistered trademark. ***ZW USA, Inc. v. PWD Sys., LLC,*** 889 F.3d 441, 449 (8th Cir. 2018). Registration of a trademark constitutes prima facie evidence that the trademark is valid and protectible. ***Lovely Skin, Inc. v. Ishtar Skin Care Prods., LLC***, 745 F.3d 877, 883 (8th Cir. 2014) (citing **15 U.S.C. §1115(a)**). Thus, when a motion for default judgment involves a Lanham Act claim based on a registered trademark (as in the cases cited by Evans), courts do not have to spend much analysis on whether the plaintiff sufficiently alleged the existence of a valid trademark. *See **Chanel, Inc. v. besumart.com***, 240 F. Supp. 3d 1283,

---

[3] ***DaimlerChrysler AG v. Bloom***, 315 F.3d 932, 937 (8th Cir. 2003).

[4] ***Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc.***, 35 F.3d 1226, 1241 (8th Cir. 1994).

6

1287, 1289 (S.D. Fla. 2016); *Xiem Studio, LLC v. Nguyen*, No. 4:14-CV-1366-CEJ, 2015 WL 3795852, at *1-2 (E.D. Mo. June 18, 2015); *Breaking the Chain Found., Inc. v. Capitol Educ. Support, Inc.*, 589 F. Supp. 2d 25, 29 (D.D.C. 2008). When claims are based on an unregistered trademark, courts considering whether to grant default judgment must analyze whether the mark is valid and protectable, and they have declined to grant default judgment if the allegations in the complaint fail to satisfy this element. *See also Vietnam Reform Party v. Viet Tan - Vietnam Reform Party*, No. 17-cv-00291-HSG, 2019 WL 4015813, at *4-6 (N.D. Cal. Aug. 26, 2019) (granting default judgment); *Sigma Enters., LLC v. Alluring Deals, LLC*, No. SA CV 17-1074-DOC (JCGx), 2017 WL 10439659, at *5 (C.D. Cal. Nov. 15, 2017) (granting default judgment); *Malofeev v. Unknown Party*, No. CV-14-02684-PHX-DLR, 2016 WL 213007, at *2-3 (D. Ariz. Jan. 19, 2016) (denying default judgment); *WFTV, Inc. v. Maverik Prod. LLC*, No. 6:11-CV-1923-ORL-28, 2013 WL 3119461, at *4-5, *12 & n.13 (M.D. Fla. June 18, 2013) (adopting report and recommendation) (denying default judgment with respect to unregistered trademarks); *Piolin Prods., Inc. v. Velez*, No. C-07-05245 RMW, 2008 WL 3380806, at *2-4 & n.2 (N.D. Cal. Aug. 8, 2008) (adopting report and recommendation) (granting default judgment); *Gaboratory, Inc. v. Gaboratory Int'l, Inc.*, No. CV 07-04725 MMM (EX), 2008 WL 11406056, at *6 & nns.24-25 (C.D. Cal. June 10, 2008) (granting default judgment), *set aside*, 2008 WL 11406072 (Nov. 10, 2008).

The Lanham Act defines a trademark as "including 'any word, name, symbol, or device or any combination thereof' used by any person 'to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.'" *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (quoting **15 U.S.C. § 1127**). To determine whether a mark is valid and protectable, the court classifies it into one of four categories: (1) arbitrary or fanciful, (2) suggestive, (3) descriptive, or (4) generic. *Frosty Treats Inc. v. Sony Computer Entm't Am. Inc.*, 426 F.3d 1001, 1005 (8th Cir. 2005).

> "[Arbitrary or fanciful marks are] never a common name for a product[] and bear[] little or no relationship to the kind of product represented." "An

> arbitrary term is one that has a dictionary meaning—though not describing the product[,]" such as "Ivory" soap and "Camel" cigarettes. "A fanciful mark is a name that is made-up to identify the trademark owner's product[,]" such as "Kodak" photography products, "Exxon" oil, and "Clorox" bleach.

*Thoip v. Walt Disney Co.*, 736 F. Supp. 2d 689, 704 (S.D.N.Y. 2010) (fourth and fifth alterations in original) (footnotes omitted) (quoting *Gruner + Jahr USA Publ'g v. Meredith Corp.*, 991 F.2d 1072, 1075-76 (2d Cir. 1993)).

> An arbitrary or fanciful trademark is the strongest type of mark and is afforded the highest level of protection. At the other end of the spectrum, a generic term is one that is used by the general public to identify a category of goods, and as such merits no trademark protection. *See* **Miller Brewing Co. v. G. Heileman Brewing Co.**, 561 F.2d 75, 79-81 (7th Cir.1977) (holding "Lite Beer" to be generic). Suggestive and descriptive marks fall somewhere in between. A suggestive mark is one that requires some measure of imagination to reach a conclusion regarding the nature of the product. *See* **Am. Home Prods. Corp. v. Johnson Chem. Co. Inc.**, 589 F.2d 103, 106 (2d Cir. 1978) (holding the mark "Roach Motel" to be suggestive because "[w]hile roaches may live in some motels against the will of the owners, motels are surely not built for roaches to live in"). A descriptive mark, on the other hand, immediately conveys the nature or function of the product and is entitled to protection only if it has become distinctive by acquiring a secondary meaning. *See* **20th Century Wear, Inc. v. Sanmark–Stardust Inc.**, 747 F.2d 81, 87-88 (2d Cir. 1984) (finding "Cozy Warm ENERGY–SAVERS" to be descriptive).

*Duluth News-Tribune v. Mesabi Publ'g Co.*, 84 F.3d 1093, 1096 (8th Cir. 1996) (bold emphasis added) (citation omitted); *see also* *Thoip*, 736 F. Supp. 2d at 703-04 (listing aspirin, automobile, and shredded wheat as examples of generic marks; "Tasty" bread as an example of a descriptive mark; and "Wet Ones" moistened towelettes, "Wite-Out" correction fluid, "Tide" laundry detergent, and "Orange Crush" soda as examples of suggestive marks).

> A mark has secondary meaning when "by long and exclusive use in the sale of the user's goods, the mark has become so associated in the public mind with such goods that the mark serves to identify the source of the goods and to distinguish them from those of others." *Aromatique,* [*Inc. v. Gold Seal, Inc.*,] 28 F.3d [863,] 870 [(8th Cir. 1994)]. If the mark's "primary significance" for consumers is not its identification of its source, it does not have secondary meaning . . . .

8

*Sturgis Motorcycle*, 908 F.3d at 323 (bold emphasis added). In sum, arbitrary, fanciful, or suggestive marks are "inherently distinctive" and entitled to trademark protection regardless of whether they have acquired secondary meaning; descriptive marks are valid and protectable trademarks only if they have acquired distinctiveness through secondary meaning; and generic marks may not give rise to a trademark-infringement claim.

An unfair-competition claim, however, can be based on a generic mark. *See* **Home Builders Ass'n of Greater St. Louis v. L&L Exhibition Mgmt., Inc.**, 226 F.3d 944, 950 (8th Cir. 2000); **PSK, LLC**, 757 F. Supp. 2d at 861-62; *see also* **Metric & Multistandard Components Corp. v. Metric's, Inc.**, 635 F.2d 710, 714 (8th Cir. 1980). To give rise to a claim, the generic mark must have acquired secondary meaning. **Id.** The Eighth Circuit has reasoned that although a "generic trademark . . . is not protected from copying[,] . . . . relief [under the Lanham Act] may be appropriate to require the copier to take reasonable measures to eliminate public confusion as to the source of its competing product or service." **Home Builders Ass'n**, 226 F.3d at 950. Thus, "[w]hen a generic term is involved, 'a competitor's use of that name, without more, does not give rise to an unfair competition claim under . . . the Lanham Act." **PSK, LLC**, 757 F. Supp. 2d at 862 (quoting **Blinded Veterans Ass'n v. Blinded Am. Veterans Found.**, 872 F.2d 1035, 1043 (D.C. Cir. 1989)). But a claim may arise if the defendant engaged in passing off or otherwise failed "to adequately identify itself as the source of the product," causing a likelihood of consumer confusion. **Id.** (quoting **Blinded Veterans**, 872 F.2d at 1043).

Evans alleges unfair competition and trademark infringement based on Defendants selling apparel featuring the word "Iowant." *See* Docs. 1, 10, 10-1. Evans alleges that Iowant—a portmanteau of "Iowa" and "want," and a play on "I want"—is a made-up, fanciful word entitled to the highest level of trademark protection. Doc. 1. Evans's complaint does not allege that he has marketed the shirts using the Iowant name; Evans alleges he has only used "Iowant" as a feature of the t-shirt's design, which contains the phrase, "Iowant Another Beer."

To determine whether Evans can claim trademark protection under these circumstances, I look to other cases in which courts addressed trademark protection based

9

on a t-shirt design. In *Thoip*, the plaintiff "claim[ed] rights to a family of unregistered trademarks stemming from a collection of children's books." 736 F. Supp. 2d at 693. Each book featured a different "Little Miss" character named after a "particular personality or character trait," such as "Little Miss Chatterbox" and "Little Miss Bossy." *Id.* at 694-95. The plaintiff then began selling t-shirts featuring a picture of the character along with the character's "Little Miss" name in bold block lettering. *Id.* at 697. The plaintiff brought suit against the defendant when the defendant started selling t-shirts featuring Disney characters along with the phrase "Miss" or "Little Miss" and a personality trait in bold block lettering. *Id.* at 699-701. At summary judgment, the court analyzed the protectability of plaintiff's marks as a family and based on "the distinctiveness of the marks as a whole." *Id.* at 706-07. The court found that the characters were fanciful and inherently distinctive; that the bold block font was arbitrary but "tie[d] the books and characters together"; and that the "Little Miss" phrase, "while not descriptive of the products themselves (e.g., books or shirts), [was] descriptive of the characters, who portray the relevant trait." *Id.* at 707-08. Although the phrase was descriptive, viewing the marks as a whole (to include the phrase, the font, and the character), the court held that the marks were inherently distinctive and entitled to protection without a showing of secondary meaning. *Id.* at 708.

In *Black Dog Tavern Co. v. Hall*, 823 F. Supp. 48, 51 (D. Mass. 1993), the plaintiff owned a restaurant called The Black Dog at Martha's Vineyard, a popular tourist destination, and registered the trademark "The Black Dog" for its restaurant and baked goods. The plaintiff sold t-shirts (at its restaurant and in a mail-order catalog) featuring a black dog and the phrase, "The Black Dog, Martha's Vineyard." *Id.* at 51-52. The defendant began selling t-shirts featuring an upside-down dog or a skeletal dog and the phrase "The Dead Dog, Martha's Vineyard," in the same font used on plaintiff's t-shirts; and t-shirts featuring a black hog and the phrase, "The Black Hog, Martha's Vineyard." *Id.* at 53. The defendant argued that the plaintiff's marks were "merely functional and, therefore, not entitled to protection," because people bought the Black Dog t-shirts based on the t-shirt's design, not because they wanted a t-shirt from the Black Dog restaurant.

10

*Id.* at 53. The court disagreed, noting the evidence established "people buy Black Dog T-shirts precisely because they associate them with plaintiff's establishments." *Id.* The court held that where "a mark indicates source, its 'aesthetic functionality' cannot preclude a finding of nonfunctionality." *Id.* The court found (for purposes of summary judgment) that the plaintiff's marks were arbitrary or fanciful and therefore inherently distinctive and entitled to protection. *Id.*

The court in *WSM, Inc. v. Tennessee Sales Co.*, 709 F.2d 1084 (6th Cir. 1983), also addressed a functionality argument. In that case, the plaintiff owned an amusement park and sold t-shirts featuring a stylized design of the amusement park's name, Opryland. *Id.* at 1085. The defendant began selling t-shirts using a similar design, but that said, "Music City," not "Opryland." *Id.* at 1086. The defendant challenged the plaintiff's registered trademark, arguing that the design was "functional, i.e., 'ornamental' or 'decorative.'" *Id.* at 1087. The court noted that although "[a] purely functional item will not qualify for trademark protection[, t]hat an item serves or performs a function does not mean . . . that it may not at the same time be capable of indicating sponsorship or origin where aspects of the item are nonfunctional." *Id.* at 1087 (citations omitted). The court held that the Opryland mark "served to indicate source in addition to any 'ornamental' function it might also serve" and therefore was entitled to trademark protection. *Id.* at 1087.

The defendant also raised a functionality argument in *Three Blind Mice Designs Co. v. Cyrk, Inc.*, 892 F. Supp. 303 (D. Mass 1995). The plaintiff in that case was a former professional hockey player and current referee for the National Hockey League who began selling t-shirts featuring three blind mice as hockey referees. *Id.* at 306. He later used the design on business cards, letterhead, stationery, and mail order sheets, and expanded the design to include referees for different sports. *Id.* at 305-06. He registered the original hockey-referee design as a trademark with the state, but the USPTO rejected his application to register his designs, finding they were "mere ornamentation." *Id.* at 306-07. He brought suit against the defendant, who sold t-shirts featuring a similar design of three blind mice as soccer and basketball referees. *Id.* at 307-08. The court held that to succeed on his Lanham Act claim for unfair-competition, he needed to prove that his mark was "not

11

merely functional" (in addition to proving distinctiveness and likelihood of confusion). *Id.* at 310. The court held that plaintiff's marks were inherently distinctive because "the 'three blind mice' design . . . bears no discernable relationship to the apparel on which it is imprinted." *Id.* at 311. The court rejected the defendant's argument "that the designs are mere ornamentation because they are emblazoned across the front of a shirt or sweatshirt," noting "many of the designs are placed on the breasts of shirts, the necks of turtle neck [sic] shirts, or on hats in a way which has been used by other companies to designate the source of the goods, *e.g.*, an alligator for Izod, or a polo pony for Ralph Lauren." *Id.* at 311. Thus, the court found that "[d]espite its decorative function, the imprint of plaintiff's trademark on" apparel "is widely understood as a designation of source or origin and therefore constitutes protectable trademark usage." *Id.*

Finally, in *Go Pro Ltd. v. River Graphics, Inc.*, No. CIVA01CV600JLK, 2006 WL 898147, at *1 (D. Colo Apr. 5, 2006), the plaintiff sold t-shirts and hats embroidered with the phrase, "Here Fishy, Fishy." The plaintiff described the shirt on invoices to its mail-order customers as "Here Fishy, Fishy"; labeled shipping containers of large orders of the shirt with "HERE FISHY" in large bold letters; and attached hang tags on the embroidered clothing it sold to one large retailer that said, "HERE FISHY …". *Id.* at *1-2. The plaintiff's trademark application was rejected as "merely ornamental." *Id.* at *1. Nevertheless, the plaintiff brought suit against the defendant for trademark infringement and unfair competition under the Lanham Act for selling shirts embroidered with the "Here Fishy, Fishy" phrase. *Id.* at *1-2. The court granted summary judgment to the defendant on the plaintiff's trademark-infringement claim. *Id.* at *7. The court noted a design that "is nothing more than ornamental" and does not act "as an indicator of source" is not a trademark. *Id.* at *4. The court held that the plaintiff's use of "Here Fishy, Fishy" on t-shirts and hats was merely ornamental, distinguishing other categories of cases involving t-shirt designs:

> The first category is those of cases in which trademarks were deemed to have already been strong and[/]or well-known as source indicators before their decorative use upon t-shirts or other related paraphernalia. *E.g.* ***Boston Athletic Ass'n v. Sullivan***, 768 F.2d 22 (1st Cir. 1989) (promotional

12

> association with The Boston Marathon) *and **Black Dog Tavern** . . . ,* 823 F. Supp. 48 . . . (promotional association with Black Dog Tavern restaurant). The second involves marks used decoratively upon t-shirts and other paraphernalia but which identify a secondary source of sponsorship. *E.g. **In re Paramount Pictures Corp.**,* 213 U.S.P.Q. 1111 (T.T.A.B. 1982) (words "Mork & Mindy" and design not merely ornamental on t-shirts because it indicated not the manufacturer but a secondary source of sponsorship, the television show Mork & Mindy). The third evince a category of decorative marks which through additional unique design or strategic placement upon t-shirts are viewed as both ornamental and source indicating. ***In re Watkins Glen Int'l, Inc.**,* 227 U.S.P.Q. 727 (T.T.A.B.1985) (stylized auto racing checkered flag design likely to be perceived as not only ornamental but also as an indication of source); ***Three Blind Mice Designs*** . . . , 892 F. Supp. 303 . . . (designation on breast of shirts, necks of turtlenecks or on hats in way which has been used by other companies to indicate source . . .).

*Id.* at *4 (bold emphasis added). The court noted that "[a] designation used as ornamentation rather than as source indication may nonetheless accrue trademark rights if the designation acquires secondary meaning," but found insufficient evidence of secondary meaning for the "Here Fishy, Fishy" design on apparel to be a protectable trademark for purposes of summary judgment. *Id.* at *5. With respect to the plaintiff's unfair-competition claim, however, the court found a genuine issue of material fact regarding secondary meaning based on the plaintiff's use of "Here Fishy, Fishy" on the shipping containers, invoices, and hang tags attached to the shirts and denied summary judgment. *Id.* at *3-4, *6.

The court in *Go Pro* cited several decisions from the USPTO regarding ornamentation. In *In re Olin Corp.*, 181 U.S.P.Q. 182 (T.T.A.B. 1973), the USPTO held that a design mark of a logo "previously . . . registered for skis" could serve as an indication of source when used on t-shirts and that this "ornamentation" was entitled to trademark protection. The USPTO contrasted the example of a shirt "'ornamented' with various sayings such as 'Swallow Your Leader,'" which "probably would not be considered as an indication of source" and would not be entitled to trademark protection; with the example of a shirt featuring the name of a university, which would be entitled to trademark protection, because although the name "serve[s] as ornamentation on" the shirt, it "also

13

advise[s] the purchaser that the university is the secondary source of that shirt." *Id.* In *In re Astro-Gods Inc.*, 223 U.S.P.Q. 621 (T.T.A.B. 1984), the USPTO characterized *In re Olin Corp.* as involving an "ornamental matter" that "at the time of its first use as ornamentation [on a shirt], . . . was already a recognized trademark of applicant for services or other goods" and thereby served a source-indicating function. The USPTO in *In re Astro-Gods* denied trademark registration to the term "Astro Gods," used as part of shirt design involving Greek mythology and astrology, because "Astro Gods" was "not likely to be perceived as anything other than part of the thematic whole of the ornamentation of applicant's shirts." *Id.* The USPTO also denied trademark protection to the term "SUMO" on clothing and hats as "merely . . . an ornamental feature of applicant's goods," finding it therefore did "not function as a trademark." *In re Dimitri's Inc.*, 9 U.S.P.Q.2d 1666 (T.T.A.B. 1988).

As the cases discussed above illustrate, without a showing of secondary meaning, a merely ornamental or functional mark on a t-shirt that does not serve to designate source or origin is not a valid trademark (regardless of whether it is fanciful). Here, the complaint does not allege that Evans used the "Iowant" name in connection with other goods or services prior to its appearing on a t-shirt. *Cf. WSM,* 709 F.2d 1084 (amusement park); *Thoip*, 736 F. Supp. 2d 693 (books); *Black Dog Tavern*, 823 F. Supp. 48 (restaurant); *In re Olin Corp.*, 181 U.S.P.Q. 182 (skis). The complaint does not allege that Evans used the Iowant name in any manner by itself (such as on the clothing's tags, on packaging, on invoices, or on stationary); it appeared only on t-shirts as part of the phrase, "Iowant Another Beer." *Cf. Go Pro Ltd.*, 2006 WL 898147; *Three Blind Mice Designs*, 892 F. Supp. 303; *see also Thoip*, 736 F. Supp. 2d at 708 (analyzing phrase as part of t-shirt design as a whole); *In re Astro-Gods*, 223 U.S.P.Q. 621 (same). The facts here—seeking trademark protection for a term that has only appeared on apparel as part of a longer phrase and larger design—are most similar to the facts in *Go Pro Ltd.* (as it relates to the "Here Fishy, Fishy phrase on the front of the t-shirts) and *In re Astro Gods* and *In re Dimitri's*, in which trademark protection was denied. The allegations in the complaint do not establish that "Iowant" is a valid trademark based on inherent distinctiveness: the word "Iowant" is

14

part of the "thematic whole" of the ornamentation on the t-shirt, and it is not used to designate source or origin. *See **In re Astro-Gods***, 223 U.S.P.Q. 621; *see also **Star Bedding Co. v. Englander Co.***, 239 F.2d 537, 540, 542 (8th Cir. 1957) (holding that defendant mattress company that used star design on its mattress did not infringe competitor mattress company's trademark, a logo featuring its name and stars; the court noted that defendant's star decoration "in no manner pointed to the source or origin of the article" and that "[b]y its trade-mark[, plaintiff] did not acquire a general monopoly as to the use of the symbol of a star" as decoration on mattresses).

A merely ornamental mark may be entitled to trademark protection upon a showing of secondary meaning. *See **Home Builders Ass'n***, 226 F.3d at 949 (noting that although a "functional trade dress is not protected from copying," it may form the basis of an unfair-competition claim upon a showing of secondary meaning); ***In Re Dimitri's Inc.***, 9 U.S.P.Q.2d 1666 (T.T.A.B. 1988) (noting a merely ornamental t-shirt design may be entitled to trademark protection upon a "showing that purchasers recognize the matter as an indication of the source of the goods"). Here, although the complaint alleges that the "Iowant Another Beer" apparel "achieved recognition, positive feedback[,] and immediate goodwill" (Doc. 1 at 2), that people liked and recognized the "Iowant Another Beer" t-shirts does not mean that they associated the t-shirts with a particular source or perceived the term "Iowant" as a trademark (and does not establish secondary meaning). *See **Sturgis Motorcycle**,* 908 F.3d at 330 (holding that evidence people associated the word "Sturgis" on t-shirts with the annual motorcycle rally in Sturgis, SD, did not establish consumers "viewed [the t-shirts] as identifying a specific 'brand' of rally-related things and thus [we]re not viewing them as a mark" (citing ***OBX-Stock, Inc v. Bicast, Inc.*** 558 F.3d 334, 341 (4th Cir. 2009) (denying trademark protection to plaintiff, who successfully marketed products featuring "OBX"—plaintiff's invented abbreviation for the Outer Banks of North Carolina—because plaintiff "affixed the letters OBX to stickers, souvenirs, and other sundries *not* to label an OBX brand product produced by [his company] OBX–Stock, but to indicate an association with the Outer Banks"))).

I do not find that the facts in the complaint, taken as true, establish the existence of a valid and protectable trademark in the term "Iowant" as a matter of law. Neither do I find that the facts in the complaint establish that Defendants falsely designated the origin of their goods by selling similar shirts to Plaintiff that use the word "Iowant" as a play on "I want." Both Evans's and Defendants' use of "Iowant" as part of a larger t-shirt design merely serves as ornamentation on a t-shirt or other apparel, not as a designation of source or origin. Accordingly, I recommend that the district court find that the facts alleged in the complaint do not establish a necessary element of Plaintiff's claims and that the district court deny Plaintiff's motion for default judgment.

### *2. Whether the Facts in the Complaint Establish Likelihood of Confusion*

Although I have found Evans's complaint fails to state a necessary element of his claims, I will briefly address the likelihood-of-confusion element because this is a report and recommendation. "Likelihood of confusion is a finding of fact." ***SquirtCo v. Seven-Up Co.***, 628 F.2d 1086, 1090-91 (8th Cir. 1980). "[T]he confusion inquiry is fact-intensive and generally inappropriate for a motion to dismiss," and "even cursory and improbable allegations of consumer confusion sufficiently" support a claim for unfair competition. ***My Pillow, Inc. v. LMP Worldwide, Inc.***, 331 F. Supp. 3d 920, 934 (D. Minn. 2018) (citing ***Phoenix Entm't Partners, LLC v. Lapadat***, 123 F. Supp. 3d 1114, 1121-22 (D. Minn. 2015)). Here, if the district court disagrees with my analysis in the preceding section and finds that the allegations in the complaint establish that Evans has a valid and protectable trademark in the term "Iowant" or that Defendants' actions otherwise falsely designated the source of their apparel, then I recommend finding that the allegations in Evans's complaint establish a likelihood of confusion.

### III. CONCLUSION

Because Evans's complaint (Doc. 1) fails to state a claim for trademark infringement or unfair competition, I respectfully recommend that the district court **deny** Evan's motion

16

for default judgment (Doc. 10) and direct the Clerk of Court to enter judgment in favor of Defendants and close the case.

Objections to this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b), and Local Rule 72A, must be filed within fourteen days of the service of a copy of this Report and Recommendation; any response to the objections must be filed within fourteen days after service of the objections. Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* **Fed. R. Civ. P. 72(b)(2)**; **LR 72A**. Failure to object to the Report and Recommendation waives the right to de novo review by the district court of any portion of the Report and Recommendation, as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**ENTERED** this 31st day of December, 2019.

*/s/ Kelly K.E. Mahoney*
Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa