# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

RYAN EVANS,

    Plaintiff,

vs.

DUSTIN GAVIN and IOWANT, LLC,

    Defendants.

No. 19-CV-94-LRR

**ORDER**

_____

## TABLE OF CONTENTS

I.    INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

II.    RELEVANT PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . .2

III.    FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

IV.    STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

V.    OBJECTIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
    A.    *Legal Framework for Default Judgment*. . . . . . . . . . . . . . . . . . . . .6
    B.    *Ornamental Mark*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    C.    *Trademark and Trade Dress*. . . . . . . . . . . . . . . . . . . . . . . . . . .11
    D.    *Evidentiary Hearing or Amend Complaint*. . . . . . . . . . . . . . . . . . .13

VI.    CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

## I. INTRODUCTION

The matter before the court is Plaintiff Ryan Evans's Objections (docket no. 16) to United States Chief Magistrate Judge Kelly K.E. Mahoney's Report and Recommendation (docket no. 15), which recommends that the court deny Evan's Motion for Default Judgment (docket no. 10), enter judgment in favor of Defendants Dustin

Gavin and Iowant, LLC ("Iowant") and close this case. *See* Report and Recommendation at 16-17.

## II. *RELEVANT PROCEDURAL HISTORY*

On September 4, 2019, Evans filed the Complaint (docket no. 1), alleging violation of the Lanham Act, 15 U.S.C. § 1125(a) (Count I) and trademark infringement in violation of 15 U.S.C. § 1125(a) (Count II). *See generally* Complaint ¶¶ 13-25. On September 24, 2019, Gavin and Iowant were each served with a copy of the Complaint. *See* Return of Service (docket nos. 5-6, 14). On October 8, 2019, Evans filed an Amended Motion for Default Entry (docket no. 8) against Gavin and Iowant. On October 9, 2019, the Clerk of Court entered default. *See* Default Entry (docket no. 9). On October 16, 2019, Evans filed the Motion for Default Entry. On October 21, 2019, mail sent to Gavin and Iowant, including the Clerk's Default Entry, was returned to the Clerk of Court as undeliverable.[1] *See* docket nos. 11-12. On October 22, 2019, the court entered an Order (docket no. 13) referring this matter to Judge Mahoney for issuance of a report and recommendation. On December 31, 2019, Judge Mahoney issued the Report and Recommendation, which recommends that the court deny the Motion. On January 13, 2020, Evans filed the Objections. On January 15, 2020, Evans moved to supplement the Objections, which the court granted. *See* docket nos. 17-18.

Evans requests an "Oral Hearing." *See* Objections at 1. The court finds that an oral hearing is unnecessary. Accordingly, Evans's request is denied. The matter is fully submitted and ready for decision.

---

[1] As Judge Mahoney explained in the Report and Recommendation, if a party is properly served with the summons and complaint and fails to respond to the action, it is not necessary for the default entry or motion for default judgment to be served on that party. *See* Report and Recommendation at 4; *see also Volvo Fin. Servs. v. Freightport, Inc.*, No. 17-10401-MGM, 2018 WL 547539, *1 (D. Mass. Jan. 23, 2018) (granting default judgment against defendant despite entry of default judgment being returned as undeliverable); *Zinganthing, LLC v. Import Store*, 158 F.Supp.3d 668, 670 n.1 (N.D. Ohio 2016) (same); *Trustees of Nat'l Asbestos Workers Med. Fund v. Wilson*, No. 2:12-cv-06449, 2014 WL 1239935, at *1 (S.D. W. Va. Mar. 28, 2014) (same).

### III. *FACTUAL BACKGROUND*

In 2017, Evans "conceived of an idea for clothing and apparel that featured a design shaped like the State of Iowa along with the fanciful word, 'Iowant.'" Complaint ¶ 6. The initial design had the phrase "Iowant Another Beer." *Id*. Evans "marketed and sold the 'Iowant Another Beer' apparel at a Cedar Rapids restaurant/bar." *Id*. ¶ 7.

In or about 2019, Gavin "misappropriated the idea for 'Iowant' and 'Iowant Another Beer'" by: (1) selling identical and similar apparel; (2) applying for a trademark of "Iowant" with the U.S. Patent and Trademark Office; and (3) registered domain names for Iowant.com. *Id*. ¶ 9. Gavin also organized Iowant, LLC. *Id*. ¶ 10.

On August 13, 2019, counsel for Evans sent Gavin a cease and desist letter, "demanding that Gavin cease using the Iowant brand name and transfer any property interests Gavin wrongfully had obtained using the name." *Id*. ¶ 11. Gavin did not respond to the August 2019 cease and desist letter. *Id*. ¶ 12.

In the Complaint, Evans alleges that he "owns superior rights to the Iowant name, image and source-identifying characteristics." *Id*. ¶ 14. Evans claims that "[t]he name, idea and image originated with [him]." *Id*. Evans alleges that Gavin's and Iowant's "use of the 'Iowant' word, name and mark is likely to cause confusion, cause mistake, or deceive as to the affiliation, connection or association between Evans and Gavin [and Iowant], or to the origin, sponsorship, or approval of Gavin's goods by Evans [and Iowant]—all in violation of 15 U.S.C. § 1125(a)." *Id*. ¶¶ 16-17. Evans asserts that he has been damaged by Gavin and Iowant's use of the name "Iowant" and mark. *Id*. ¶ 18. Evans seeks "injunctive relief under 15 U.S.C. § 1116 to permanently enjoin Gavin and Iowant[,] LLC from using the same or any similar mark as the 'Iowant' mark owned by Evans" and "require Gavin and Iowant[,] LLC to recall, destroy and account for all products distributed or sold using the 'Iowant' mark, and to transfer to Evans all purported property rights in the 'Iowant' name, including domain names, the LLC interest and the pending trademark registration." *Id*. ¶ 20.

Evans also alleges that he owns the unregistered trademark rights to the term "Iowant." *Id*. ¶ 23. Evans further alleges that "Gavin and Iowant[,] LLC have infringed [his] rights by using an identical name in commerce, causing a substantial likelihood of confusion." *Id*. ¶ 24. Evans seeks remedies pursuant to 15 U.S.C. § 1125(a), including damages to compensate for Gavin and Iowant's infringements. *Id*. ¶ 25.

## IV. STANDARD OF REVIEW

Pursuant to statute, the court applies the following standard of review to the report and recommendation of a magistrate judge:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1). Similarly, Federal Rule of Civil Procedure 72(b) provides for de novo review of a magistrate judge's report and recommendation on dispositive motions when objections are made. Fed. R. Civ. P. 72(b)(3). The Eighth Circuit Court of Appeals has held that it is reversible error for a district court to fail to conduct de novo review of a magistrate judge's report and recommendation when such review is required. *See United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (providing that "failure to engage in the required de novo review is reversible error).

The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1)[ ], intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not

4

preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Id.* at 154.

The Eighth Circuit has suggested that in order to trigger de novo review, objections to a magistrate judge's conclusions must be specific. *See Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *see also Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994) (noting that some circuits do not apply de novo review when a party makes only general and conclusory objections to a magistrate judge's report and recommendation and finding that Branch indicates the Eighth Circuit's "approval of such an exception"); *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (reminding parties that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). The Sixth Circuit Court of Appeals has explained this approach as follows:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Goney v. Clark*, 749 F.2d 5, 6 n.1 (3d Cir. 1984) (finding that "plaintiff's objections lacked the specificity necessary to trigger de novo review"); *Whited v. Colvin*, No. C 13-4039-MWB, 2014 WL 1571321, at *2-3 (N.D. Iowa Apr. 18, 2014) (concluding that, because the plaintiff "offer[ed] nothing more than a conclusory objection to . . . [the report and recommendation] . . . [the plaintiff's] objection [should be treated] as if he had not objected at all"); *Banta Corp. v. Hunter Publ'g Ltd. P'ship*, 915 F. Supp. 80, 81 (E.D. Wis. 1995) ("De novo review of a magistrate judge's recommendation is

5

required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made.").

## V. OBJECTIONS

Evans raises three objections to the Report and Recommendation. First, Evans argues that Judge Mahoney erred in finding that his mark is ornamental. *See generally* Objections at 4-8. Second, Evans argues that Judge Mahoney erred by conflating trademark/trade dress law and unfair competition law. *See generally* Objections at 8-10. Third, Evans argues that Judge Mahoney erred by failing "to allow him either an evidentiary hearing or an opportunity to amend the Complaint." *See generally* Objections at 10-11.

### A. Legal Framework for Default Judgment

The Clerk of Court entered default against Gavin and Iowant pursuant to Fed. R. Civ. P. 55(a). "Entry of default under Federal Rule of Civil Procedure 55(a) is not, as such, entry of judgment; it merely permits the plaintiff to move for a default judgment under Rule 55(b)(2), assuming that the default is not set aside under Rule 55(c)." *Inman v. Am. Home Furniture Placement, Inc.*, 120 F.3d 117, 118 n.2 (8th Cir. 1997). Fed. R. Civ. P. 55(c) is not at issue here.

Pursuant to Federal Rule of Civil Procedure 55(b), a default judgment may be entered as follows:

> (1) By the Clerk. If the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk on the plaintiff's request, with an affidavit showing the amount due must enter judgment for that amount and costs against a defendant who has been defaulted for not appearing and who is neither a minor nor an incompetent person.
>
> (2) By the Court. In all other cases, the party must apply to the court for a default judgment. . . . The court may conduct hearings or make referrals preserving any federal statutory right to a jury trial— when, to enter or effectuate judgment, it needs to:

6

(A) conduct an accounting;
(B) determine the amount of damages;
(C) establish the truth of any allegation by evidence; or
(D) investigate any other matter.

Fed. R. Civ. P. 55(b). Upon entry of default, "the factual allegations of a complaint (except those relating to the amount of damages) are taken as true, but 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'" *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A C. Wright. A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed. 1998)); *see also Marshall v. Baggett*, 616 F.3d 849, 852-53 (8th Cir. 2010) (providing that "it is incumbent upon the district court to ensure that the unchallenged facts constitute a legitimate cause of action prior to entering final judgment") (quotation omitted).

### B. *Ornamental Mark*

Evans argues that Judge Mahoney's finding that "[t]he allegations in the [C]omplaint do not establish that 'Iowant' is a valid trademark based on inherent distinctiveness: the word 'Iowant' is part of the 'thematic whole' of the ornamentation on the t-shirt, and it is not used to designate source or origin" is misplaced. Objections at 4-5 (quoting Report and Recommendation at 14-15). Evans points out that "the Complaint specifically alleges that the term 'Iowant' is fanciful, and that Evans initially used the term as part of the phrase 'Iowant Another Beer.'" *Id.* at 5. Further, Evans points out that the Report and Recommendation acknowledges that "'arbitrary, fanciful, or suggestive marks are "inherently distinctive" and entitled to trademark protection regardless of whether they have acquired secondary meaning[.]'" *Id.* (quoting Report and Recommendation at 9). Evans contends that:

> [H]aving acknowledged this critical legal point, the Report and Recommendation then overlooks that Evans has established the dispositive factual point based on the Defendants' failure to respond to the Complaint.

7

> . . . Evans alleged his mark should be categorized as fanciful. [Judge Mahoney] should not have made an independent factual decision of how to categorize "Iowant." Rather, the Complaint's allegation that "Iowant" is a fanciful term must be deemed admitted. . . . The effect of this admission is that Evans'[s] mark immediately achieves a protectable interest as a fanciful mark[.]

*Id*. at 5-6.

The court disagrees with Evans's first point, that by stating in the Complaint that the word "Iowant" is fanciful, the mark therefore, "immediately achieves a protectable interest as a fanciful mark." Complaint ¶ 6; Objections at 6. As Judge Mahoney points out in the Report and Recommendation, in the context of default judgment, the court must "analyze whether the facts in the [C]omplaint, taken as true, state a claim under the Lanham Act and for trademark infringement under Iowa state law." Report and Recommendation at 5. Further, the Report and Recommendation correctly states that Evans's "claims require (1) that Evans had a valid and protectable trademark or that Defendants otherwise falsely designated the source of their apparel and (2) that a likelihood of confusion existed." Report and Recommendation at 6. Thus, Judge Mahoney exhaustively analyzed "[w]hether the facts in the Complaint establish that Evans had a valid and protectable trademark or that Defendants otherwise falsely designated the source of their apparel." *Id*.; *see also generally id*. at 6-16 (Judge Mahoney's full analysis of Evans's Complaint). Every case cited by Judge Mahoney and every case reviewed by the court involves the undertaking of such analysis when determining whether default judgment is appropriate in a trademark case. This case is not different. Moreover, such analysis is particularly pertinent in a default judgment case like the instant action, where, here, there is no registered trademark and the parties have filed competing applications for a trademark. While the United States Patent and Trademark Office ("USPTO") issued a nonfinal denial in Defendants' trademark application, Defendants' trademark application was filed before Evans's application. *See* Letter from USPTO (docket no. 17-1) at 1. Specifically, the letter from the USPTO states that "a mark in a

8

prior-filed pending application may present a bar to registration of [Evans's] mark." *Id*. Indeed, Judge Mahoney notes that, "[w]hen claims are based on an unregistered trademark, courts considering whether to grant default judgment must analyze whether the mark is valid and protectable, and they have declined to grant default judgment if the allegations in the [C]omplaint fail to satisfy this element." Report and Recommendation at 7 (citing cases). The court finds no error with Judge Mahoney's approach to analyzing the allegations in Evans's Complaint.

Next, Evans argues that the Report and Recommendation's conclusion that "Iowant" on t-shirt designs containing the phrase "Iowant Another Beer" "does not designate source of origin, but rather amounts to ornamental use" overlooks that the Complaint alleges that "Evans 'owns superior rights to the Iowant name, image and source-identifying characteristics.'" *Id*. at 6 (quoting Complaint ¶ 14). Evans maintains that, "[b]y alleging both that the mark is 'fanciful' and also that it has 'source identifying characteristics,' Evans has made factual allegations of distinctiveness sufficient to state a 'legitimate cause of action.'" Objections at 6.

Similar to the previous argument, simply alleging in the Complaint that the term "Iowant" has source-identifying characteristics, *see* Complaint at ¶ 14, did not relieve Judge Mahoney from "analyz[ing] whether the facts in the [C]omplaint, taken as true, state a claim under the Lanham Act and for trademark infringement under Iowa state law." Report and Recommendation at 5. Again, in the context here, where there is no registered trademark and the parties have filed competing applications for a trademark, the court finds that Judge Mahoney did not err in exhaustively analyzing "[w]hether the facts in the Complaint establish that Evans had a valid and protectable trademark or that Defendants otherwise falsely designated the source of their apparel." Report and Recommendation at 6; *see also id*. at 6-16 for Judge Mahoney's full analysis.

Finally, Evans argues that Judge Mahoney erred by not taking judicial notice of his trademark application because the trademark specimen attached to the application "clearly shows the mark being used in other than ornamental fashion." *Id*. at 6-7.

9

Further, Evans argues that Judge Mahoney's failure to take judicial notice of his trademark application was inconsistent because Judge Mahoney took judicial notice of Defendant's trademark application. *Id*. at 6. Evans concludes that:

> [T]he Report and Recommendation held him to too high a standard in the context of a motion for default judgment. The Report and Recommendation essentially sua sponte granted a motion to dismiss. But a motion to dismiss, like a motion for default judgment, surrenders all pleaded facts to the Plaintiff, in this case Evans. Neither motion requires a Plaintiff to prove its case. . . . In this case, the Report and Recommendation . . . improperly [held] Evans to a 'formal level of evidentiary proof.' The . . . [c]ourt should reverse the Report and Recommendation's recommendation to dismiss both Counts I and II and grant judgment to Evans.

*Id*. at 7-8.

The court is unpersuaded by Evans's argument. First, Judge Mahoney did not take judicial notice of Defendant's trademark application for purposes of analyzing Evans's Complaint. Judge Mahoney took judicial notice of Defendants' trademark application for purposes of explaining the background of this action. *See* Report and Recommendation at 2. Second, even if this court were to take judicial notice of Evans's trademark application, the USPTO's letter is not dispositive evidence that Judge Mahoney's analysis is incorrect. While the USPTO did not raise an ornamental objection in its letter, the USPTO only issued a "Nonfinal Office Action," noting that "a mark in a prior-filed pending application may present a bar to registration of applicant's mark." Letter from USPTO (docket no. 17-1) at 1. Third, Judge Mahoney did not "sua sponte grant a motion to dismiss." Objections at 7. As already stated twice in this Order, Judge Mahoney properly and exhaustively analyzed "[w]hether the facts in the Complaint establish that Evans had a valid and protectable trademark or that Defendants otherwise falsely designated the source of their apparel." Report and Recommendation at 6; *see also* 6-16 for Judge Mahoney's full analysis. In conclusion, based on Evans's objections, the Complaint and the procedural posture of this case, competing trademark applications

10

with nonfinal actions by the USPTO, the court finds that Evans's objections must be overruled.

### *C. Trademark and Trade Dress*

Evans "objects to the Report and Recommendation's evaluation of the unfair competition claim (Count I) because the Report and Recommendation conflates a finding that Evans'[s] mark is ornamental for trademark purposes with a finding that the mark is 'functional' and hence unprotectable for unfair competition purposes." Objections at 8. Evans maintains that "[t]he second finding does not necessarily follow the first, nor could it, because functionality applies only to trade dress cases" and this "is not a trade dress case." *Id*. Evans argues that:

> The Report and Recommendation errs on the unfair competition claim by equating the concept of ornamentation under pure trademark cases with the concept of 'functionality' for trade dress cases, and then misapplying functionality to Evans' non-trade dress claim under Section 43(a). The Report and Recommendation states: "without a showing of secondary meaning, a merely ornamental or functional mark on a t-shirt that does not serve to designate source or origin is not a valid trademark (regardless of whether it is fanciful.)" Report and Recommendation, at 14. It goes on to reject the unfair competition claim by concluding "Both Evans's and Defendants' use of 'Iowant' as part of a larger t-shirt design merely serves as ornamentation on a t-shirt or other apparel, not as designation of source or origin." *Id*., at 16.
>
> The problem with this approach to analyzing the Section 43(a) claim is that: (a) ornamentation is a concept primarily related to trademark registration; (b) functionality relates to trade dress or product packaging; and (c) in any event, the Complaint alleges the term Iowant is fanciful and has source-identifying characteristics.
>
> To the extent the Report and Recommendation treats "ornamentation" as being synonymous with "functionality," it confuses topics.

Objections at 9.

Evans overreaches in his reading of the Report and Recommendation. First, while Judge Mahoney mentions the term "functional" on page 14 of the Report and

11

Recommendation, the court does not find that she "conflates," "confuses" or makes "synonymous" ornamentation and functional when analyzing Evans's Complaint. *See* Objections at 8. Indeed, the Report and Recommendation states that:

> Here, the [C]omplaint does not allege that Evans used the "Iowant" name in connection with other goods or services prior to its appearing on a t-shirt. *Cf. WSM*, 709 F.2d 1084 (amusement park); *Thoip*, 736 F.Supp.2d 693 (books); *Black Dog Tavern*, 823 F.Supp. 48 (restaurant); *In re Olin Corp.*, 181 U.S.P.Q. 182 (skis). The [C]omplaint does not allege that Evans used the Iowant name in any manner by itself (such as on the clothing's tags, on packaging, on invoices, or on stationary); it appeared only on t-shirts as part of the phrase, "Iowant Another Beer." *Cf. Go Pro Ltd.*, 2006 WL 898147; *Three Blind Mice Designs*, 892 F.Supp. 303; *see also Thoip*, 736 F.Supp.2d 708 (analyzing phrase as part of t-shirt design as a whole); *In re Astro-Gods*, 223 U.S.P.Q. 621 (same). The facts here—seeking trademark protection for a term that has only appeared on apparel as part of a longer phrase and larger design—are most similar to the facts in *Gro Pro Ltd.* (as it relates to "Here Fishy, Fishy" phrase on the front of the t-shirts) and *In re Astro-Gods* and *In re Dimitri's*, in which trademark protection was denied. The allegations in the [C]omplaint do not establish that "Iowant" is a valid trademark based on inherent distinctiveness: the word "Iowant" is part of the "thematic whole" of the ornamentation on the t-shirt, and it is not used designate source or origin. *See In re Astro-Gods*, 223 U.S.P.Q. 621; *see also Star Bedding Co. v. Englander Co.*, 239 F.2d 537, 540, 542 (8th Cir. 1957) (holding that defendant mattress company that used star design on its mattress did not infringe competitor mattress company's trademark, a logo featuring its name and stars; the court noted that defendant's star decoration "in no manner pointed to the source or origin of the article" and that "[b]y its trade-mark[, plaintiff] did not acquire a general monopoly as to the use of the symbol of a star" as decoration on mattresses).

Report and Recommendation at 14-15. Further, the Report and Recommendation concludes that:

> I do not find that the facts in the [C]omplaint, taken as true, establish the existence of a valid and protectable trademark in the term "Iowant" as a matter of law. Neither do I find that the facts in the [C]omplaint establish that Defendants falsely designated the origin of their goods by selling similar shirts to Plaintiff that use the word "Iowant" as a play on "I want." Both Evans's and Defendants' use of "Iowant" as part of a larger t-shirt

12

> design merely serves as ornamentation on a t-shirt or other apparel, not as a designation of source or origin.

Report and Recommendation at 16. Further, in her analysis of the Complaint, Judge Mahoney addressed the Complaint's allegations that term Iowant is fanciful and has source-identifying characteristics. Therefore, based on Evans's objections, the Complaint and the procedural posture of this case, competing trademark applications with nonfinal actions by the USPTO, the court finds that the objections must be overruled.

### D. *Evidentiary Hearing or Amend Complaint*

Evans objects that "the Report and Recommendation denies him the chance to cure any perceived deficiencies in the factual allegations contained in the Complaint." Objections at 10. Evans maintains that, "[r]ather than recommending dismissal, Evans should have been afforded oral argument, an evidentiary hearing . . . or leave to amend the Complaint." *Id*. at 11.

While the referral order (docket no. 13) provides that the magistrate court may order an evidentiary hearing, if necessary, that alone does not entitle Evans to an evidentiary hearing. Here, an evidentiary hearing is unnecessary. Overall, Evans's objections are fairly general in nature and lack a great deal of specificity with regard to the Report and Recommendation. As has been made abundantly clear, the court finds that Judge Mahoney properly analyzed Evans's Complaint to determine "[w]hether the facts in the Complaint establish that Evans had a valid and protectable trademark or that Defendants otherwise falsely designated the source of their apparel." Report and Recommendation at 6; *see also id*. at 6-16 for Judge Mahoney's full analysis. The court finds nothing in the objections that takes away from Judge Mahoney's conclusions. *See id*. at 16. The court is not unsympathetic to Evans's situation, as Defendants have failed to answer or litigate the Complaint. However, given that the USPTO has not made a final decision on the parties' competing trademark applications, the court is reluctant to allow Evans to simply amend the Complaint. Instead, the court will deny the Motion for

13

Default Judgment and dismiss the Complaint without prejudice to refiling a new Complaint at Evans's discretion.

## VI. CONCLUSION

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 16) filed by Plaintiff Ryan Evans are **OVERRULED**;

(2) The Report and Recommendation (docket no. 15) is **ADOPTED as modified**;

(3) The Motion for Default Judgment (docket no. 10) is **DENIED**;

(4) The Complaint (docket no. 1) is **DISMISSED WITHOUT PREJUDICE**; and

(5) The Clerk of Court is **DIRECTED** to close this case.

**IT IS SO ORDERED**.

**DATED** this 12th day of June, 2020.

*[signature]*
LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA